IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HENRY JAMES WIMBERLY,
       Plaintiff,

vs.                            5:10cv301/RS/MD

NORTHWEST FLORIDA
RECEPTION CENTER, et al.
       Defendants.

---

## REPORT AND RECOMMENDATION

    This cause is before the court upon plaintiff's civil rights complaint filed pursuant to Title 42 U.S.C. §1983 in which he names the Northwest Florida Reception Center Annex and the Holmes Correctional Institution, the Florida Department of Corrections, and two wardens as defendants.   From a review of this complaint, it is evident that plaintiff cannot present a viable claim for relief under section 1983 as to some or all of the named defendants, and that he has failed to exhaust his administrative remedies with respect to his claims.

    Plaintiff is an inmate currently incarcerated at the Reception and Medical Center. His initial receipt date into the DOC was September 30, 2010.[1]  He complains about the conditions of confinement within the Department of Corrections generally, and about specific medical needs of his that have not been properly addressed.  With respect to his individualized needs, plaintiff contends that he has received inadequate medical care for pre-existing conditions including high blood pressure, kidney stones, prostate and heart problems.  As to the general conditions at the prison, plaintiff asserts that inmates are

---

[1]See http://www.dc.state.fl.us/ActiveInmates/detail.asp?Bookmark=2&From=list&SessionID=654266292

issued inadequate and ill-fitting clothing and insufficient personal hygiene items, that they are given dirty or bug infested bedding and there are no sprinkler systems in the dorms. Plaintiff further contends that the temperature in the prison dorms is not properly regulated, that the prison food, which is prepared in roach infested kitchens, is of poor quality and taste and that inmates are not treated with respect.

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1.  whether the conduct complained of was committed by a person acting under color of state law; and

> 2.  whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988) (citations omitted); *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (citing *West*).

As an initial matter, the Northwest Florida Reception Center Annex and the Holmes Correctional Institution are not proper defendants in this action. Neither has an independent corporate existence. Instead, they are part of the state correctional system operated by the Department of Corrections. See § 944.02(1), Fla. Stat. The Department of Corrections has supervisory and protective care, custody and control over all matters pertaining to all prisons and other state correctional institutions, including NFRCA and HCI. See § 945.025, Fla. Stat. Accordingly, they are not suable entities, and claims against them are not viable.

With respect to the plaintiff's remaining claims, it is clear that he has not exhausted his administrative remedies. Chapter 33-103 of the Florida Administrative Code provides for a multi-tiered grievance procedure. Except in certain limited cases, inmates are to first utilize an informal grievance procedure. Ch. 33-103.005, F.A.C. The next level of review is a formal grievance to the warden or assistant warden. Ch. 33-103.006, F.A.C. Finally, an inmate may appeal to the Office of the Secretary. Ch. 33-103.007, F.A.C. In order to exhaust the grievance process, an inmate must avail himself of all levels of review. The filing of untimely grievances does not satisfy the exhaustion requirement. *Johnson v.*

*Meadows*, 418 F.3d at 1159. The plaintiff in this case did not exhaust his administrative remedies, as there is no indication that he has appealed the results of his formal grievances to the Office of the Secretary.[2] Under the pre-PLRA version of § 42 U.S.C.A. § 1997e, courts had the option to stay actions not administratively exhausted, if the court found this to be "appropriate and in the interests of justice." 42 U.S.C. § 1997e(a)(1)(1994)(amended 1996). By contrast, the current version provides that:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a) (West Supp.1997). Therefore, the plain language of the statute makes the exhaustion requirement a mandatory prerequisite to filing suit. *See Leal v. Georgia Dept. Of Corrections,* 245 F.3d 1276 (11th Cir. 2001); *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Miller v. Tanner,* 196 F.3d 1190, 1193 (11th Cir. 1999); *Harris v. Garner,* 190 F.3d 1279, 1286 (11th Cir. 1999); *Alexander v. Hawk*, 159 F.3d 1321, 1329 (11th Cir. 1998). The exhaustion requirement applies to all inmate suits about any aspect of prison life, including cases in which plaintiffs seek only monetary damages. *Woodford v. Ngo,* 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct.1819, 1825, 149 L.Ed.2d 958 (2001). Both the Supreme Court and the Eleventh Circuit have recognized myriad policy reasons favoring exhaustion. In *Woodford v. Ngo,* the Supreme Court recognized the general benefits of exhaustion as follows:

> First, exhaustion protects "administrative agency authority." Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the

---

[2]The institutional grievances filed along with the complaint reflect that they were filed in November of 2010, which would not have afforded plaintiff time to complete the grievance appeal process before filing his complaint on November 15, 2010. Plaintiff notes in an attachment page to his complaint marked "Conclusion" that he used the prison grievance system in both institutions and wrote two letters to the FDOC Insurance, including a notice of intent to sue. This is not equivalent to proper exhaustion of the prison grievance process.

programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures."

> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."

*Woodford v. Ngo,* 126 S.Ct. at 2385 (internal citations omitted). The Eleventh Circuit has also described seven policy reasons favoring an exhaustion requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998)). The exhaustion process is mandatory, and cannot be waived even when the process is futile or inadequate. *Bryant v. Rich,* 530 F.3d 1368, 1373 (11th Cir. 2008) (citing *Alexander,* 159 F.3d at 1325-26); *Jones v. Nassau County Correctional Officers*, 2008 WL 1746063 (citing *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000)) (alleged inadequacy of grievance procedure does not excuse prisoner's failure to comply with it).

Even though plaintiff may have pursued and ultimately completed exhaustion of his administrative remedies since his case was filed, it would still be subject to dismissal, because he failed to exhaust these remedies before suit was commenced. *Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir. 2003) ("court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred" and "[i]f

exhaustion was not completed at the time of filing, dismissal is mandatory"); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir.2001) (rejecting argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.")); *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."); *see also Nyhuis v. Reno*, 204 F.3d 65, 71 (3rd Cir. 2000) ("Allowing the federal courts to fashion prison remedies before the prisons themselves have had the opportunity (and have the ability) to do so, is surely not what Congress intended when it enacted the [Prison Litigation Reform Act]."); *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir.1998) ("[E]xhaustion is now a pre-condition to suit.... Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply."); *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.1997) ("Congress specifically amended the statute to ... requir[e] federal prisoners to exhaust all administrative remedies before bringing ... a claim under 42 U.S.C. § 1983.")). Plaintiff cannot cure the defect in his failure to exhaust his administrative remedies by post-filing exhaustion. Thus, he has failed to state a claim and his case must be dismissed without prejudice. *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) (citation omitted) ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

Even if he had exhausted his administrative remedies, he cannot state a claim against the named defendants with respect to his Eighth Amendment medical claim. The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." *Hellig v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114

S.Ct. 1970, 128 L.Ed.2d 811 (1994).  However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted)).

A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999).  "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *McElligott v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 105-06.  Furthermore, because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  *Hudson v. McMillian*, 503 U.S. 1, 9 , 112 S.Ct. 995, 1000,  117 L.Ed.2d 156 (1992).  To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow, supra; Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).  First, a plaintiff must set forth evidence of an objectively serious medical need.  *Taylor*, 221 F.3d at 1258; *Adams*, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. *Farmer v. Brennan*, 511 U.S. at 834 (1994); *McElligott*, 182 F.3d at 1254; *Campbell*, 169 F.3d at 1363.  Third, as with any tort claim, he must show that the injury was caused by the defendant's wrongful conduct.

*Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)).  No liability arises for an official's failure to alleviate a significant risk that he should have perceived but did not, and imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).  In this case although plaintiff has identified numerous medical needs that may very well qualify as "serious," he has not identified a state actor or actors who is directly responsible for the alleged violation of his Eighth Amendment rights with respect to those needs.  To the extent he attempts to hold the wardens of HCI and NFRC accountable for the specific medical deprivations he claims to have suffered, there is no apparent basis for their liability. *Respondeat superior*, without more, does not provide a basis for recovery under section 1983.  *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Goebert v. Lee County,* 510 F.3d 1312, 1331 (11th Cir. 2007); *Cottone v. Jenne, 326* F.3d 1352 (11th Cir. 2003); *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995).  "Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); see also *Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001)*; Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995);  *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).  No such connection is apparent from the complaint.

In order to state a claims challenging conditions of confinement under the Eighth Amendment plaintiff must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety.  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).  As the Supreme Court stated in *Rhodes*, "the Constitution does not mandate comfortable prisons, and prisons ... which house persons convicted of

serious crimes, can not be free of discomfort." *Id.* at 349, 101 S.Ct. at 2400. Moreover, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399; *Chandler v. Crosby*, 379 F.3d 1278, 1288-89 (11th Cir. 2004); *Veteto v. Miller* 829 F.Supp. 1486,1496 (M.D. Pa. 1992)(institution where plaintiff was housed is "a maximum security federal penitentiary, not a restaurant, a haberdashery or a health spa.").

The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). The food need not be "tasty or aesthetically pleasing" but merely "adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir.1996), amended by 135 F.3d 1318 (9th Cir. 1998); *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (*quoting Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). Even if plaintiff could amend to state a claim under the above standards, his failure to exhaust his administrative remedies before filing suit subjects these claims to dismissal as well. *Rivera, supra.*

Plaintiff has moved for a preliminary and permanent injunction (doc. 4). The granting or denial of a temporary restraining order or preliminary injunction rests in the discretion of the district court. *Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971). The district court, however, must exercise its discretion in the light of whether:

1.     There is a substantial likelihood that plaintiff will prevail on the merits;

2.     There exists a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

3.      The threatened injury to plaintiff outweighs the threatened harm injunction will do to the defendant; and

4.      The granting of the preliminary injunction will not disturb the public interest.

*Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Tefel v. Reno,* 180 F.3d 1286, 1295 (11th Cir. 1999); *Johnson v. United States Department of Agriculture*, 734 F.2d 774 (11th Cir. 1984); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). Furthermore, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements."  *Siegel, supra; All Care Nursing Service v. Bethesda Memorial Hosp.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (quotations omitted).

Federal courts are normally reluctant to interfere with matters of internal prison administration since they are ill-equipped to do so.  *Lewis v. Casey*, 518 U.S. 343, 386-387 n.8, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 404-06, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Newman v. Alabama*, 683 F.2d 1312, 1320 (11th Cir. 1982), *cert. denied*, 460 U.S. 1083 (1983); *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir.1981) (courts should avoid enmeshing themselves in the minutiae of prison operations in the name of the Eighth Amendment). The very nature of lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights . . . ."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974), *quoting Price v. Johnston*, 334 U.S. 266, 285 (1948).  As the Supreme Court stated in *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted):

> [T]he  problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

The purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be

reviewed. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital*, 887 F.2d 1535, 1537 (11th Cir. 1989); *United States v. State of Alabama*, 791 F.2d 1450, 1457 n.9 (11th Cir. 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987). This necessitates that the relief sought in the motion be closely related to the conduct complained of in the actual complaint. *Devose*, 42 F.3d at 471; *Penn v. San Juan Hosp.*, 528 F.2d 1181, 1185 (10th Cir. 1975). Also the persons from whom the injunctive relief is sought must be parties to the underlying action. *See In re Infant Formula Antitrust Litigation, MDL 878 v. Abbott Laboratories*, 72 F.3d 842, 842-43 (11th Cir. 1995). Because plaintiff's complaint is subject to dismissal for his failure to exhaust, his motion for injunctive relief should be denied. His motion for an emergency order (doc. 5) should be denied for the foregoing reasons as well.

Finally, plaintiff has filed a motion for appointment of counsel. Title 28 U.S.C. § 1915 grants general authority for the appointment of counsel as a matter of discretion in purely private, civil litigation, and there is no express provision for the payment of fees or reimbursement of costs, as in the case of criminal prosecutions and habeas corpus proceedings. *Killian v. Holt*, 166 F.3d 1156 (11th Cir. 1999). Indigent civil litigants do not have a constitutional or statutory right to appointed counsel. *Bass v. Perrin*, 170 F.3d 1712, 1720 (11th Cir. 1999). The difficulties presented to the pro se plaintiff are typical of those faced by other incarcerated litigants. Furthermore, plaintiff has already shown an above average ability in presenting his case to the court. Regardless, based on this court's recommendation that this case be dismissed this motion should also be denied.

Accordingly, it is respectfully RECOMMENDED:

1. That the plaintiff's case be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim due to plaintiff's failure to exhaust his administrative remedies.

2. Plaintiff's motion for appointment of counsel (doc. 3) be denied.

3. Plaintiff's motion for injunctive relief (doc. 4) be denied.

4. Plaintiff's motion for emergency order (doc. 5) be denied.

DONE AND ORDERED this 4th day of January, 2011.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**